# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELICA MARTINEZ, et al., | CASE NO. CV F 06-1827 LJO TAG |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| vs. | (Doc. 33.) |
| COUNTY OF KERN, | |
| Defendants. | |

## INTRODUCTION

In this 42 U.S.C. § 1983 ("section 1983") and related action alleging wrongful death of a foster care child, defendants Moss Beach Homes, Inc., MBH, Inc. and Aspira Foster and Family Services (collectively "MBH") seek to dismiss plaintiffs Angelica Martinez and Fernando Ybarra's (collectively "plaintiffs'") section 1983 cause of action on grounds that MBH is not a state actor for section 1983 purposes. This Court considered MBH's motion to dismiss on the record and VACATES the April 13, 2007 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court DISMISSES plaintiffs' First Cause of Action for Deprivation of Familial Relationship in Violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment against MBH.

**BACKGROUND**

MBH is a private, non-profit, public benefit corporation and is a California licensed foster family agency which locates foster homes for court dependent children. Plaintiffs are parents of infant FYM who died while in foster care after he had been involuntarily removed from plaintiffs and adjudicated a dependent of the Kern County Juvenile Court.

Plaintiffs proceed on their first amended complaint which alleges that MBH, under color of law for section 1983 purposes, placed FYM and his two siblings in the foster home of defendant Shirley Francisco ("Ms. Francisco") where FYM died. The first amended complaint also names as defendants Kern County, its Departments of Human Services and Child Protective Services[1] and social workers Helen Jenkins ("Ms. Jenkins") and Jenee Morris ("Ms. Morris"). The first amended complaint alleges that MBH and the Kern defendants breached duties and violated California regulations as to investigation, supervision, training and monitoring of Ms. Francisco, Ms. Jenkins and Ms. Morris.

More specifically, the first amended complaint alleges against all defendants a first cause of action entitled "Deprivation of Familial Relationship in Violation of the First Amendment and Due Process Clause of the Fourteenth Amendment, Pursuant to 42 U.S.C. §§ 1983, 1988." According to plaintiffs, the first cause of action states a claim for deprivation of plaintiffs' familial relationship with FYM to violate the First Amendment and Fourteenth Amendment's Due Process Clause. The first cause of action alleges MBH and the Kern defendants:

> . . . knew or should have known that their training, policies, customs, and practices regarding the custody, care and protection of dependent minors such as Decedent were so inadequate that the failure to correct them would result in future incidents of injuries to, or the death of, dependent minors, such as Plaintiff.

The first cause of action further alleges that MBH and the Kern defendants:

> . . . authorized and/or acquiesced in . . . training, policies, customs and practices and the commission of the type of acts by their employees agents similar to those which are alleged herein to have caused injuries to Plaintiffs and Decedent. Furthermore, said Defendants were deliberately indifferent to the probability of the occurrence of such acts and failed to correct said training, policies, customs and practices, thereby causing the damages alleged herein.

Furthermore, the first cause of action alleges that MBH and the Kern defendants "maintained or

---

[1] Kern County and its Departments of Human Services and Child Protective Services will be referred to collectively as the "Kern Defendants."

2

permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs" alleged by plaintiffs and "were objectively indifferent . . . to the practice of subordinates, employees and/or agents of said Defendants of being objectively and subjectively indifferent to the health and safety of dependent minors such as Decedent."

The first amended complaint alleges a (second) negligence/wrongful death cause of action against all defendants, including MBH, and a (third) battery/wrongful death cause of action against Ms. Francisco.

MBH pursues a F.R.Civ.P. 12(b)(6) motion to dismiss the first cause of action on grounds MBH neither acted under color of law nor deprived plaintiffs of rights secured under the Constitution or federal laws. MBH contends that the first amended complaint "fail[s] to state any constitutional violation attributable to MBH" in that:

1.  MBH is not vicariously liable for allegations solely attributable to Kern County;
2.  The first amended complaint lacks factual contentions against MBH on which to base a constitutional violation; and
3.  The first amended complaint's allegations of state law violations fail to support constitutional violations.

As to it, MBH characterizes the first amended complaint as a state tort claim for wrongful death. Plaintiffs argue that dismissal of the first cause of action "would serve no purpose other than to prematurely and unnecessarily adjudicate a novel cause of action before necessary, inevitable and unavoidable discovery against MBH was conducted." MBH responds that it "should not be forced to engage in burdensome and costly discovery regarding claims that cannot be stated against MBH."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

MBH seeks dismissal of the first cause of action under F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts to support the claim to entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229

3

1  (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)); *see also Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981). When addressing a motion to dismiss, a court must accept as true the complaint's allegations in question, *Hospital Bld. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976), construe the pleading in light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, *reh'g denied*, 396 U.S. 869, 90 S.Ct. 35 (1969). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir.), *cert. denied,* 506 U.S. 915, 113 S.Ct. 321 (1992); *Johnson v. State of Calif.*, 207 F.3d 650, 653 (9th Cir. 2000).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

As discussed below, plaintiffs have failed to establish via the first amended complaint that MBH is a state actor for section 1983 purposes or that a constitutional violation is attributable to MBH.

### **State Actor**

Section 1983 provides:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . .

42 U.S.C. § 1983.

To state a section 1983 claim, a plaintiff must plead that: (1) a defendant acted under color of state law at the time the complained of act was committed; and (2) a defendant deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928 (1987).

Municipalities and other local government units are persons to whom section 1983 applies. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978); *see also Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1387-1388 (1997); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 950 (1997); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995). A defendant has acted under color of state law when he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031 (1941)); *Polk County v. Dodson*, 454 U.S. 312, 317-318, 102 S.Ct. 445 (1981); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir.), *cert. denied*, 118 S.Ct. 559 (1997); *Vang v. Xiong*, 944 F.2d 476, 479 (9th Cir. 1991); *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986). Generally, private parties are not acting under color of state law. *See Price v. Hawaii*, 939 F.2d 702, 707-708 (9th Cir. 1991), *cert. denied*, 503 U.S. 938, 112 S.Ct. 1479 (1992). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1988).

"When Congress enacted as the statutory remedy for violations of the Constitution, it specified that the conduct at issue must have occurred 'under color of' state law; thus, liability attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 462 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172, 81 S.Ct. 473, 476 (1961)). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?" *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764 (1982)).

Four different criteria or tests are employed to identify state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Sutton*, 192 F.3d at 835-836. Satisfaction of one of the tests is sufficient to find state action if "no countervailing factor exists." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

5

*Public Function*

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir.) (internal quotations marks omitted), *cert. denied*, 536 U.S. 905, 122 S.Ct. 2358 (2002). The public function test is satisfied only on a showing that the function at issue is "both traditionally and exclusively governmental." *Kirtley*, 326 F.3d at 1093.

MBH contends that the state does not exclusively find foster homes or provide foster care. MBH notes that as a foster family agency, it finds homes "to provide day to day care for dependent children of the court." California Health and Safety Code section 1502(4) defines a foster family agency as "any organization engaged in the recruiting, certifying, and training of, and providing professional support to, foster parents, or in finding homes or other places for placement of children for temporary or permanent care who require that level of care as an alternative to a group home. Private foster family agencies shall be organized and operated on a nonprofit basis." MBH contends that its function to locate and oversee foster homes is not exclusively a government function in that California statutes provide for foster home recruitment and certification by private non-profit organizations. MBH notes that the process to certify "foster homes by a private foster family agency is distinguishable in a number of ways from the process of licensing of foster homes by the state."

Turning to foster care, MBH argues that a state does not exclusively "care for minors who are adjudicated to be abused and neglected by their natural parents." MBH notes that it is merely a "placement option for the county social worker" and that potential caregivers of dependent children include foster homes, close relatives and natural parents. MBH points to California Welfare & Institutions Code section 361.2(e), which provides:

> (e) When the court orders removal pursuant to Section 361 [dependent child of court], the court shall order the care, custody, control, and conduct of the child to be under the supervision of the social worker [in county welfare department] who may place the child in any of the following:
>
> (1) The home of a noncustodial parent . . .
>
> (2) The approved home of a relative.

        (3) The approved home of a nonrelative extended family member . . .

        (4) A foster home in which the child has been placed before an interruption in foster care, if that placement is in the best interest of the child and space is available.

        (5) A suitable licensed community care facility.

        (6) With a **foster family agency** to be **placed in a suitable licensed foster family home or certified family home** which has been certified by the agency as meeting licensing standards.

        (7) A home or facility in accordance with the federal Indian Child Welfare Act.

        (8) A child under the age of six years may be placed in a community care facility licensed as a group home for children, or a temporary shelter facility, or a temporary shelter care facility . . .  (Bold added.)

MBH argues that since it certifies foster families but does not provide foster care it is not a state actor in that foster parents and foster care facilities have been found not to be state actors. *See Mabe v. San Bernardino County Dept. of Social Services*, 237 F.3d 1101, 1109, n. 3 (9th Cir. 2001); *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001); *Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 168, n. 9 (3rd Cir. 2001). To bolster its contention that MBH does not engage in state action or conduct, MBH points out that only peace officers and social workers are authorized to remove children involuntarily from homes. *See* Cal. Welf. & Inst. Code, §§ 305, 306. MBH correctly argues in its reply papers that the state possesses custody, control and responsibility to place a child who is removed from his/her parents by court order. MBH correctly points out that its power is limited to locate and certify foster homes under California Health and Safety Code section 1502.

Plaintiffs characterize MBH's activities as "placement" of minors who have been removed from their parents and seized by the state. Plaintiffs contend that such placement "is an activity that is traditionally the exclusive prerogative of the state."

Plaintiffs rely on *Donlan v. Ridge*, 58 F.Supp.2d 604, 610 (E.D. Pa. 1999), where the Pennsylvania district court observed that "the forcible removal of [a] child from his homes by the foster care agency was exclusively the prerogative of the state, because only the state could remove children from their homes." Plaintiffs also point to *Harris ex rel. Litz v. Lehigh County Office of Children & Youth Services*, 418 F.Supp.2d 643, 651 (E.D. Pa. 2005), where the Pennsylvania district court again focused on "removal" of children to note that foster care agencies perform an exclusive state prerogative

"namely the removal of children from their homes."

Removal of children is distinguishable from placement of children already removed from a parental home by state authorities. MBH's statutory powers are limited to child placement, not child removal. Plaintiffs acknowledge that MBH did not seize FYM. Plaintiffs fail to demonstrate that foster care placement of already removed children amounts to a traditionally and exclusively governmental function. The authority on which plaintiffs rely fails to substantiate as much. As MBH notes, its role and function is that of a private non-profit organization, not the state.

### *Joint Action*

Under the joint action test, a court considers whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). Courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). "A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.'" *Franklin*, 312 F.3d at 445 (quoting *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865 (1990). The Ninth Circuit has been careful "to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights." *Franklin*, 312 F.3d at 445.

MBH argues that plaintiffs fail to allege facts of joint action or substantial cooperation between MBH and the state to satisfy the joint action test. Plaintiffs do not meaningfully challenge the absence of joint action. As such, MBH cannot be found a state actor based on joint action.

### *Compulsion Test*

The compulsion test considers whether the "coercive influence" or "significant encouragement" of the state effectively converts a private action into government action. *Kirtley*, 326 F.3d at 1094. MBH argues that the first amended complaint fails to allege that the state compelled MBH's actions or has coercive influence on those actions. MBH concludes that its alleged unconstitutional actions were

8

not transformed into state action due to government compulsion or coercion. Although plaintiffs assert that MBH was "pervasively entwined" with state policy, plaintiffs fail to claim a requisite state coercive influence or significant encouragement. MBH is a not a state actor based on the compulsion test.

### *Nexus*

The nexus test, arguably the most vague of the four approaches, asks whether "there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley*, 326 F.3d at 1095 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924 (2001)). As noted by MBH, the first amended complaint offers several bases that MBH is a state actor in that MBH: (1) is state regulated; and (2) exercises delegated regulatory and enforcement functions and power to take involuntarily custody, supervision, control and possession of a child. Plaintiffs argue there is a sufficiently close nexus between the state and MBH in that MBH: (1) places and assigns minors delivered to it because they had been involuntarily seized by and were in legal custody of the state; and (2) has state delegated responsibility to supervise and monitor such placement.

As to state regulation, the U.S. Supreme Court has observed that the "mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453 (1974). As such, MBH correctly points out that its regulation by California does not transform it into a state actor.

To address the allegation that it exercises delegated regulatory and enforcement functions, MBH notes that the California Department of Social Services investigates complaints, files accusations and enforces statutes and regulations. MBH observes that it oversees homes it certifies for compliance with foster care regulations and statutes. MBH analogizes its overseeing conduct to a building contractor who follows building codes to construct a building. MBH claims that it has not been delegated authority to enforce statutes and regulations.

Turning to delegated authority to involuntarily seize minors, MBH again notes that its lacks such authority in that applicable California statutes empower the state, not foster care agencies like MBH, to seize minors. According to MBH, there is no support that when the county places a child in an MBH home, all responsibility for the child, including custody, supervision, control and possession, is

1  transferred to MBH, a private agency.  MBH notes that the decision where to place a dependent child
2  rests with a state social worker, not MBH.  *See* Cal. Welf. & Inst. Code, § 361.2(e).  MBH points out
3  that it receives involuntarily removed children seized by child protective services or police, not MBH,
4  and that MBH does not forcibly detain minors in a locked facility.  MBH concludes that the "nexus"
5  analysis fails because MBH was not delegated state duties to detain and involuntarily remove children.

6  MBH is correct that there is an absence of a close nexus between the state and the challenged
7  action to treat seemingly private behavior as that of the state.  Again, MBH's role and function is not
8  broad enough to construct an nexus to state actor status.  In the foster care process, powers amounting
9  to state action rest with others, not MBH.  MBH's limited statutory role does not create the necessary
10 nexus to impose state actor status on it.

### *Countervailing Factors*

12 As noted by the Ninth Circuit in *Kirtley*, 326 F.3d at 1095, the United States Supreme Court has
13 challenged lower courts by stating that even facts that, standing alone, would require a finding of state
14 action "may be outweighed in the name of some value at odds with finding public accountability in the
15 circumstances."  *Brentwood*, 531 U.S. at 303, 121 S.Ct. 924.  In an attempt to clarify confusion, the
16 Ninth Circuit has explained: "Although we have recognized several tests to determine where state action
17 lies, the central question remains whether 'the alleged infringement of federal rights [is] fairly
18 attributable to the government.'" *Kirtley*, 326 F.3d at 1096 (quoting *Sutton*, 192 F.3d at 835).

19 Countervailing factors do not support that MBH is a state actor in that the alleged infringement
20 is not attributable to a private non-profit agency, such as MBH.

### **Constitutional Violation Attributable To MBH**

22 MBH contends that the first amended complaint fails to allege conduct of MBH to constitute a
23 constitutional violation.  MBH argues that plaintiffs "toss in" MBH to allegations against the Kern
24 defendants.  MBH points out that social workers Ms. Jenkins and Ms. Morris are not MBH
25 employees/agents whose conduct creates MBH liability.  According to MBH, the first amended
26 complaint improperly attempts to impose vicarious liability on MBH based on Kern County policies
27 customs or practices.

28 Plaintiffs counter that MBH had affirmative regulatory duties to supervise Ms. Francisco, to

investigate her fitness as a foster parent, and to monitor her performance. Plaintiffs contend MBH was obligated to "'look' for the truth" as to Ms. Francisco to determine her unfitness for foster care. Plaintiffs ask this Court to "hold that a 42 U.S.C. § 1983 claim against a private entity acting under color of law can be based on vicarious liability." Plaintiffs concede that "the majority of courts that had considered the issue have held that a private corporation, like a municipality, may not be held vicariously liable under section 1983."

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell*, 436 U.S. at 691, 98 S.Ct. 2018; *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). "[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018)); *see Rizzo v. Goode*, 423 U.S. 362, 370-377, 96 S.Ct. 598 (1976) (general allegation of administrative negligence fails to state a constitutional claim cognizable under section 1983).

Plaintiffs ask this Court to stretch section 1983 liability to impose vicarious liability on a private entity, when such liability is not even imposed on municipalities subject to a section 1983 claim. This Court will not engage in such judicial activism. Plaintiffs point this Court to no authority to do so, and their reliance on law review commentary is insufficient to pass meaningful scrutiny for the great step

they ask of this Court. Moreover, plaintiffs fail to establish that MBH faces section 1983 liability because it is subject to California foster care regulations.[2]

### Standing

MBH argues that plaintiffs lack standing to assert a claim for FYM's seizure in that such claim is personal to FYM only. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961 (1969). "Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998). "While a person has standing to challenge the seizure of his or her own person . . . a person does not have standing to vicariously assert the Fourth Amendment rights of another person." *Osborne v. County of Riverside*, 385 F.Supp.2d 1048, 1052 (C.D. Cal. 2005) (citing *Moreno v. Baca*, 400 F.3d 1152, 1166 (9th Cir. 2005); *Moreland*, 159 F.3d at 369).

Despite MBH standing arguments, plaintiffs demonstrate that they allege claims personal to them for deprivation of familial relationship with FYM. MBH's standing argument is of no avail.

### CONCLUSION AND ORDER

In short, plaintiffs have failed to establish that MBH's alleged conduct constitutes state action to impose section 1983 liability on MBH. Plaintiffs fail to explain how or what further they could allege to qualify MBH as a state actor to warrant a further attempt to amend their complaint. As such, on the basis of good cause, this Court:

1. DISMISSES only the First Cause of Action for Deprivation of Familial Relationship in Violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment against defendants Moss Beach Homes, Inc., MBH, Inc. and Aspira Foster and Family Services; and

2. ORDERS defendants Moss Beach Homes, Inc., MBH, Inc. and Aspira Foster and Family Services, no later than April 25, 2007, to file a responsive pleading to plaintiffs' second

---

[2] In fact, *Donlan*, 58 F.Supp.2d at 608 (on which plaintiffs relies), mitigates plaintiffs' point in that the court observed that a statutory violation alone is insufficient to establish a necessary constitutional right violation to prevail on a section 1983 claim.

1 | cause of action for Negligence Causing Wrongful Death Under California Law.
2 | IT IS SO ORDERED.
3 | **Dated:    April 6, 2007**              /s/ Lawrence J. O'Neill
  | 66h44d                                   UNITED STATES DISTRICT JUDGE